1371-13 Irwin v. Secretary of Veterans Affairs, Mr. Carpenter. Mr. Carpenter appearing on behalf of Mr. William Irwin. An issue in this case is whether or not the use of VA action that was taken after an appeal has been taken can be relied upon by the Veterans Court for a harmless error determination. This appeal concerns the jurisdiction of the Veterans Court and its specific holding in Cirillo that limits its jurisdiction not only by that decision but by statute to the record of proceedings before the board. In this case, the Veterans Court made a specific finding that the board had committed error when it failed to address Mr. Irwin's entitlement. Counsel, I understand that your client's TDIU claim is proceeding. It's pending. That it was independently adjudicated. No, it's pending now, correct? That's correct. Well, actually, Your Honor, that's part of what this case is about. I know, that's what I'm asking. Is it pending or not? That's what I'm asking the question. It's pending, so if we vacate and remand, where does that put your client? I mean, it's back to square one. Aren't you asking us to do something that's going to put your client in the same shoes that he's in right now? No, Your Honor. As a matter of fact, we're asking the court to put him in a better position than he is right now. How is that? Because based upon the harmless error determination and allowing this adjudication to stand, Mr. Irwin is now going to be required to initiate a new appeal, which he's done, and that gives him a new docket number, a far later docket number than the docket number he's had in a case that's been pending since 2008. But this case has been pending at the board for a couple of years now, hasn't it? That's correct. Do you know if it's been decided by the board yet? It has never been decided on the issue of extra scheduler, Your Honor. So the TDIU claim, yeah, that's what I meant. Sorry, not to be clear. The TDIU claim is that he filed on appeal from the RO decision on the TDIU claim. Sorry if I'm going to be precise. It's pending at the board, and it has been. He filed a notice of disagreement on the RO's denial. All right. I don't want to create confusion here. What I was responding to with Judge Reyna was the action that was taken during the pending. I understand. You don't want me to confuse. I don't either. The RO, sua sponte, issued a decision on the TDIU claim. A new decision on the issue of TDIU, correct. Denying it. Yes. Your client filed a notice of disagreement. He did. And it's pending at the board. No. It can't be pending at the board until there's an issuance of a statement of the case. So there's been no statement of the case as far as you know? As far as I know, there has not been, Your Honor. But the RO denied this in February of 2012. That's correct, Your Honor. And your understanding is there's been no statement of the case for over two years? It's not unusual that it takes up to three years or longer for the issuance of a statement of the case. As far as I know, there has been no statement of the case. If there were a statement of the case issued, then under 7105, that would require Mr. Irwin to file a substantive appeal in order to complete his appeal for consideration for the first time by the board. But that goes back to what the error. But let me just be clear. So to your knowledge, this case is still at the RO because he's filed a notice of disagreement and the Secretary still hasn't issued a statement of the case? Correct. Okay. Well, the Secretary has acknowledged receiving the notice of disagreement. Yes. But that imposes a burden under 7105. Your client has not been able to appeal that because of this case? No. He's not been able to appeal that because he hasn't received a statement of the case. He can't proceed forward with his appeal based upon his notice of disagreement until there is a statement of the case. So if we were to vacate and remand, where does that put your client in terms of expediency versus... It puts him with a later docket number with the case back before the board in which the board will address the issue that they failed to address was his entitlement to extra schedule a rating. They could deal with that in the first instance if they felt that there was adequate evidence in the record or they could send it back on remand to the agency of original jurisdiction to decide that issue. But in so doing, Your Honor, if this court vacates as the Veterans Court should have vacated, then not only do you get a later docket number, but you get the right to expeditious treatment. On the way up, there is no right to expeditious treatment as the whole colloquy with Judge Hughes demonstrates because we're dealing with an appeal on the way up. Once an appeal is on remand from the court by statute, the VA is required to provide expeditious treatment. Do you know for a fact that they didn't give you the same docket number when the RO issued the TDIU claim? They can't give a docket number until there's a substantive appeal filed. You mean they can't give them a board docket number? That's correct. Do you know if the board would consider this under the old docket number since it's related to the previous board appeal? Based upon my prior experience, that would be highly unlikely that they would even consider. This is a very peculiar case. I've never seen the Secretary do this in many, many years. I confess I've not either. But I'm a little concerned that you're asking us to do something that may not get you anything better. And so if the board were to give this the same docket number on the way up, that would probably cure any harm, right? No. Because your main harm is the expeditious treatment, right? Actually, the harm is that Mr. Irwin was denied his right to judicial review. He got a determination of error. And then that determination was taken away based upon a harmless error analysis based on proceedings that took place outside the record. And based upon that, he not only lost his appeal, but he lost... I understand all that. And it seems to me that that's somewhat problematic. What I'm concerned about is that if we send this back, we're not going to advance the ball any. When you appeal to the board, you're given the same docket number as before. Then we're just sending it back for the board to hear it like they potentially could be hearing it in the same instance. But that presupposes that there is some advantage to Mr. Irwin from the adjudication that took place in 2012. And in fact, there is no benefit to that adjudication. This is an issue that the Veterans Court found as a matter of law was not considered by the board as it should have by law. That was a clear error of law. Based upon that clear error of law, Mr. Irwin was prejudiced. The only way the end-around prejudice took place was by looking at proceedings that took place outside the record. Could they have considered this? I know this is what the Secretary urged the Veterans Court to do, and it's not what they did. Could the Veterans Court have looked at this, taken judicial notice of this R.O. decision, and determined that the allegation of error, i.e., the board and the R.O.'s failure to address the TDIU claim was moot? No. Why not? Because that's a jurisdictional determination. I mean, the Veterans Court clearly has the authority to look beyond the record for a jurisdictional determination. Correct, Your Honor. But the only jurisdictional implication here is a final decision, and that final decision failed to address it. Under 7104, judicial review is based upon the record of proceedings before the Secretary at the time in which the board made the decision. This extrajudicial determination… Sure. So for the prejudicial error analysis, I think it's problematic that they went beyond that. But if they have that up, and they see the allegation of error is the board and the R.O. failed to address a TDIU claim, and the agency is voluntarily taking corrective action to do the TDIU claim, and it's now in the process of being addressed, why couldn't they say this allegation of error in the board's decision is now moot? Because that presupposes that this is corrective action, and that this is favorable corrective action. Mr. Irwin's position is… If the error is failure to address the claim, then it's favorable because they've addressed the claim. No, it's not, because the error here is the board's failure to do that. Clearly it was error for the VA to have not addressed it, but it was error by the board to address a reasonably raised issue. The court below conceded that the issue was reasonably raised, and therefore the board failed to adjudicate it. That was the board's error. That error needs to be corrected by the board. What we're doing is playing fast and loose with the Veterans Court's jurisdiction. We are allowing, in complete contradiction to what the court held below in Cirillo, the jurisdiction that is something that floats in the air. You're not saying that the agency at the R.O. level can never take actions that would correct a board error, are you? Your Honor, if the agency wants to take corrective action, then they settle the case. Well, but if they can't settle it… Let me just give you a hypothetical. If the agency had seen this case at the Veterans Court, and instead of having the R.O. issue a denial of TDIU, had the R.O. issue a grant of TDIU, then the claim would be moved, right?  Well, you're pressing your case farther than you want to. I mean, if they grant the TDIU effective from the date he asked for… From the date he asked for it, that's correct. Well, that's what my hypothesis is. Well, I'm sorry, but from my experience, the granting does not necessarily mean the allowance from the correct effective date. And that's why it's important that this case stay in appellate status. What the VA has done is to create a new stream of adjudication. But they're not treating it as a new claim. They're treating it as the claim he made previously. Well, Your Honor, I believe if you look at the record, at one spot in the decision, in the rating decision of February 23, 2012… Can you give me the site for that? It's… Sorry, I should… Unfortunately, the pages didn't come off on my copy. It's 849, I think. I believe that's correct, Your Honor. This is February 27, 2012. 849. Yeah, 849. And in the… Well, in the first sentence, it said, we made a decision on your claim for service-connected compensation received on December 15. Is that the date of the claim that was on appeal to the Board and to the Veterans Court? Or is that a different date? You're talking about the notice, Your Honor. I'm trying to direct the Court's attention to the document that follows the notice, which is the rating decision itself. Right. And the rating decision itself says you filed a new claim for benefits that was received February 21, 2012, which would have been two days before the decision. Now, I agree in the notice they said something else. They said that this case went back to 2008. But that is where the problem lies when the agency takes jurisdiction over a matter that is clearly within the jurisdiction of the Veterans Court. Unless there's further questions, I'll reserve the balance amount of time. Okay. We'll save them for your return, Mr. Carpenter. Thank you very much. Ms. Rose. Thank you, Your Honor. May it please the Court. The record demonstrates that the issue that Mr. Irwin raised before the Veterans Court regarding his claim for TDIU has been addressed. The R.O. adjudicated Mr. Irwin's claim for TDIU, and it is currently pending before the Board. So what are you saying? That this case is moot? It is moot, Your Honor. Mr. Irwin has received all of the – in accepting the late-submitted documents and basing a decision on that? There's been a concession by the government that the government erred in how it handled the TDIU claim. I think, Your Honor, this goes back to the procedurally strange way in which the claim was made. Let's go back. The government has conceded that it erred in how it handled the TDIU claim. I think that what the government has conceded was that there was a TDIU claim that, as of the time that the Veterans Court proceedings below had not yet been adjudicated. Right. And there was error. I actually – I think that that is a bit of a question here. I don't think that the R.O. was obligated to determine – So are we avoiding that question? Are we avoiding the question whether there's error below by simply saying it's moot? I mean, it seems to me that we're overlooking that and we're saying that the action was correct and let's send it back down because there's a pending action on the TDIU. And, Your Honor, if I may address that, I think that this TDIU issue was raised in a procedurally unusual way. Rather than being raised – it was raised by Mr. Irwin's counsel, Mr. Raven. Rather than being raised directly to the R.O., it was raised directly before the Board at a time when the Board was remanding the issue of Mr. Irwin's knee condition to the R.O. In a statement to the Board regarding that knee condition remand, Mr. Irwin's counsel raised for the first time a TDIU claim. That was a separate TDIU claim. They didn't address it. Then it went back up to the Board. They didn't address it. And on appeal, conceited may be a wrong word, but you certainly recognize that a TDIU claim was raised by the record and the Board didn't address it. That's correct. However, I – Normally, in those circumstances, it seems to me that in every time I've seen this, when there's an unadjudicated TDIU claim raised by the record, the Secretary agrees to a reasons and basis remand. And so what happened here seems procedurally irregular, and I don't understand how the Veterans Court can look at this affidavit and the decision in a prejudicial error analysis. And it – sorry, this is a long-speaking question, but it strikes me as you don't agree with that either since you didn't attempt to defend the Veterans Court's decision on a prejudicial error argument. I think that this was procedurally irregular. Let me make an example. Do you think the Veterans Court erred by looking at this document as part of a procedural error, a harmful error analysis? I don't think that Mr. Irwin's TDIU should have ever been before the Veterans Court. Mr. Irwin's counsel did not mention the RO failure to address the TDIU claim in his notice of disagreement or before the Board. It was raised for the first time – Well, you didn't make those arguments for the Veterans Court, though. I mean, you could have made those arguments to the Veterans Court and said this isn't properly raised, and the Veterans Court could have ruled on it and either said it is or it isn't and either sent it back to the Board or made them start over. But you took this procedural end run around this and then tried to get it declared moot, and the Veterans Court wouldn't declare it moot. They declared it harmless error. And I don't see how the Veterans Court has the authority to look beyond the record in a harmless error analysis. Your Honor, I don't necessarily disagree with that. However, I don't think that this issue was ever properly before the Veterans Court. I don't think it had jurisdiction over the TDIU claim. I think that there were errors in both sides on how this was argued. You're saying that it didn't have jurisdiction because at one time you were saying it's pending below. The TDIU claim is pending. We don't have jurisdiction. And suddenly the Secretary attaches to a reply brief decisions on the TDIU claim and then you claim, well, now it's moot. Correct. And I think that both sides could have communicated better about this and could have formulated its arguments better. I think what Mr. Irwin's counsel should have done if it was concerned that it had not yet received a decision on its TDIU claim, he had a couple of options. He could have written a letter to the RO. And we vacate and remand. What's the path that would put Mr. Irwin on the quickest, most expeditious path to a final resolution of his claim? Well, first of all, I think that allowing his TDIU adjudication that's currently with the Board would do that. Mr. Irwin certainly could ask for his docket number to be changed to his previous docket number. Would you answer Judge Rayner's question? This case has been going back and forth, up and down, hyper-technical arguments that no veteran and very few counsel can understand. Isn't it time for the Secretary and the courts to find a way of cutting through the morass which is being created with the up and down from the RO to the Board to the Veterans Courts to here and then back again? Anything that hasn't been said in exactly the same words is set aside and not used. What is the path to resolve this veteran's concerns? This veteran's concern was that he had not yet received an adjudication of his TDIU claim. That concern has been resolved by the RO's February 2012 adjudication. But the resolution of that concern, you're saying it's been resolved because he's gotten a denial. So he can appeal that denial or we can vacate here on that denial. I don't think that this Court can vacate that denial. Do you know where the case is? Is it correct that he filed a notice of disagreement and a statement of the case still hasn't been issued two years later? My understanding is that's not correct. It is currently before the Board. Mr. Raven has requested additional time and a 60-day extension. I don't have the Board docket number, but my understanding is it is currently before the Board. Your understanding is the statement of the case was filed? Yes. Has he perfected his appeal or is this what he's asked a 60-day extension for? I believe he has requested the 60-day extension to perfect his appeal. And do you know what docket number it's under? Is it under the same docket number as this? No, it is under a separate docket number. However, it is our position that if Mr. Irwin were to request that his previous docket number be applied, that's something that the Board would entertain. So this is a little frustrating. If it's at the Board and the Board can address it by agreeing to address it expeditiously under the previous docket number, then I don't understand why we're here, but it wasn't clear until just now that that's the case. And it seemed to me that the argument about the remand getting more expeditious handling had some merit. I actually don't think that those arguments do have any merit, Your Honor, and the reason for that is because Mr. Irwin raised for counsel a separate PDIU claim. He raised it in an unusual manner. Rather than raising it directly to the RO, he tagged it onto a remand that the Board was considering on his knee condition. It seems like you've kind of waived that argument when you didn't argue at the Veterans Court that he, on his appeal from the Board decision, that he hadn't raised the PDIU claim. That should have been decided by the Veterans Court, and if they'd agreed with you, you'd be fine. And if not, they'd remanded it. But that's not the arguments you made. You recognized, I think, that there was some weakness there and did this very unusual procedure. But that's not, I mean, I don't understand why you did that. But what's troubling is what we're going to do to help this case either one way or another. I don't understand if we vacate and remand that it's going to put it any farther ahead, but I also don't understand that you've necessarily committed to deciding it as if it were under the docket number of the old Board case. And, Your Honor, if I may briefly address the errors in argument that may have been made below. I think that because this issue is moot, that's also moot. If the Veterans Court never properly had jurisdiction to entertain this claim and the RO's adjudication of the PDIU claim mooted the issue of any error and it not yet being addressed. How would we know the Veterans Court didn't have jurisdiction to entertain this claim? Isn't that based upon a determination that the claim wasn't properly raised to the Board? And to me that seems completely beyond our jurisdiction to determine any of that. All we're left with is a Veterans Court decision saying that even though there was an error, it's not precedential. I don't see how we can possibly affirm on that basis and you haven't made that argument. So all you can argue to us is that the case is now moot, but it's only moot if the relief he's gotten from the agency's corrective action is the same as or greater than he would get from a remand by us, right? Correct. However, I do think that the record demonstrates, and I don't think there's any disagreement on this point, that after the statement of the case was issued on Mr. Irwin's knee condition, counsel for Mr. Irwin did not address the RO's failure to speak to his PDIU claim and it also was not addressed before the Board. We have Mr. Irwin's letter before the Board and it only generically states that he is entitled to a new examination. It doesn't mention the failure of the RO to speak to his PDIU claim. So I think that we can see that... I don't know how we drill down to those arguments. It seems to me that what's on review is the Veterans Court's decision recognizing that there was an error in the Board's failure to address the PDIU claim but finding it harmless. And that's what we have to review and it seems as if you're not defending that. I mean, you didn't do it in your brief. You're making a mootness argument. And I know I just asked you this, but how is this case moot if a remand from us would get the Board appeal adjudicated faster than an affirmance? Your Honor, the case is moot because although the Veterans Court in its final decision did not frame the argument in terms of mootness, when they accepted the counsel for VA's request to... and expeditiously considering the perfected appeal once it comes in. Yes, we could consider doing that. Especially if we ordered it, correct? Absolutely, Your Honor. However, just as a final point, I would say that given that Mr. Irwin has a separate claim for PDIU that is separate from his knee condition, there was no requirement for the RO to address both of those claims in a single decision. And it's not uncommon at all for a PDIU claim to follow along in the system with a different appeal number than an appeal for increased disability rating. So what's happened here is really not that unusual and I don't believe that Mr. Irwin had any entitlement to having his PDIU claim adjudicated under the same appeal number as his claim for increased rating on his knee condition. If there are no further questions for the Court, we rest on our briefs and are admitted. Any more questions? No. Any more questions? Thank you, Ms. Rose. Mr. Carpenter. I'd like to address the notion that this matter has been mooted. I direct the Court's attention to page 5 of that December 2012 decision, which explains the reasons for the denial of individual unemployability. The reasons given for denial are that Mr. Irwin does not meet the scheduler requirements, they don't say this, under 416A. But this case has never met the scheduler requirements of 416A. It's under 416B because he does not meet the scheduler requirements. So we have a non-denial denial on a basis that now is going to have to be separately litigated and ordered by the Board if you take this as a new claim coming up and even if you get a new docket number to be sent back by the Board because they adjudicated it under the wrong regulation. And they denied it under 416A as opposed to addressing whether or not he is or is not capable of following substantial gainful occupation under 416B, regardless of whether he meets the percentage requirements. Counsel, what's the fastest path that we could take to get to Mr. Irwin's final resolution of his claims? Reverse the decision below. Order that the matter be returned by the Veterans Court to the Board for an adjudication of the TDIU claim. And that adjudication of the TDIU claim has to be adjudicated. I understand your 4.16 thing. I mean, it sounds like the Board is going to, if it goes up the way it's going to do, the Board is going to send it back to the RO again. But isn't the Board going to send it back to the RO if we vacate and remand and send it back to the Board? Well, not necessarily. However, that is entirely possible. But if it does so, Your Honor, then it will do so under the correct retention of jurisdiction. What the VA is claiming as moot is their action that is ultra-virus, their action that is outside the jurisdiction. Well, I assume I don't agree with you that they can't do that. I mean, what really cutting through all this procedural nonsense is the Board needs to issue a decision on the TDIU claim. Correct. And it sounds like, and I know this isn't in the record, but that the statement of the case actually now has been issued. I am aware of that, and I will confirm that one way or the other and advise the Court. But if that's the case, then the appeal will be perfected, and the Board will hear the appeal far quicker than it's going to get to. Your Honor, with all due respect, the 2012 Inspector General's report says that it takes 1,000 or more days from the time in which the appeal is perfected for the appeal to get to the Court. But that's not true if the Secretary agrees to hear it under the old docket number, right? Yes, but there is no authority for this Court to issue such an order. I'm not suggesting that we have the authority, but the Secretary can certainly voluntarily agree to do that. Certainly the Secretary can do that. I just respectfully suggest that that goes way beyond the legal issue of this Court, which is whether or not the Veterans Court properly exercises jurisdiction by going outside the record. And they clearly committed error in doing that. Any further questions? Any more questions? Thank you very much, Your Honor. I appreciate it. Thank you, Mr. Carpenter.